## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DAWN B. MANTANI,

      Plaintiff,

v.                                              CV 12-701 CG/RHS

PORTFOLIO RECOVERY ASSOCIATES, LLC,
GUGLIEMLMO & ASSOCIATES PLLC, and
PAUL D. GUGLIELMO,

      Defendants.

## ORDER GRANTING SUMMARY JUDGMENT

**THIS MATTER** is before the Court upon *Defendants' Motion for Summary Judgment*, filed on January 22, 2013, (Doc. 29); *Plaintiff's Response to Defendants' Motion for Summary Judgment* ("Response"), filed on February 22, 2013, (Doc. 37); *Defendants' Reply on Summary Judgment* ("Reply"), filed on March 8, 2013, (Doc. 40); *Plaintiff's Supplemental Response to Defendants' Motion for Summary Judgment* ("Supplemental Response"), filed on May 2, 2013, (Doc. 65); and *Defendants' Supplemental Reply on Defendants' Motion for Summary Judgment* ("Supplemental Reply"), filed on May 17, 2013, (Doc. 68).  Defendants move for summary judgment pursuant to Fed. R. Civ. P. 56(a) on all claims asserted by Plaintiff in this case.

## I.    Background

Defendant Portfolio Recovery Associates, LLC's ("Portfolio") primary business is purchasing portfolios of discharged financial accounts and collecting upon those accounts.  (Doc. 31 at 1; Doc. 37 at 13).  On May 16, 2011, Portfolio purchased "a pool of discharged Visa and Master Card accounts from Capital One Bank, N.A.," which

included an account belonging to Plaintiff.  (Doc. 31 at 1).  Plaintiff's account arose from an extension of credit with Capital One Bank, but was delinquent when Portfolio purchased it from Capital One Bank.  (Doc. 1-1 at 2; Doc. 31).  Soon after, on May 24, 2011, Portfolio sent a letter to Plaintiff.  (Doc. 31-1 at 1-2).  In this letter, Portfolio informed Plaintiff that her account with Capital One Bank was purchased by Portfolio and the balance of the account was $3,478.06.  (*Id*. at 1).  The letter also informed Plaintiff that unless she contacted Portfolio within thirty days of receiving the notice to dispute the debt, the debt would be presumed valid.  (*Id*.).  Finally, the letter explained that Portfolio would provide verification of the debt upon Plaintiff's request.  (*Id*.).

On October 25, 2011, Portfolio transferred the account to Defendant Guglielmo & Associates ("G & A"), an outside law firm.  (Doc. 31 at 2).  G & A sent a letter to Plaintiff on October 26, 2011 ("October letter").  (Doc. 30-1 at 1).  This letter informed Plaintiff that she owed $3,446.42 to Portfolio, that G & A was retained to collect the debt, that she had thirty days to dispute the debt, and that G & A would provide verification of the debt upon request.  (*Id*.).  The letter was sent on G & A letterhead; the address for the firm is in Tucson, Arizona.  (*Id*.).  The letterhead also contained the names of six attorneys and used symbols to indicate the states in which these attorneys were admitted to practice law, as well as the addresses of the firm in those states.  (*Id*.).

On February 15, 2012, an attorney employed by G & A and representing Portfolio, Darren B. Tallman, who is licensed to practice law in New Mexico, filed a complaint against Plaintiff in the Sandoval County Magistrate Court.  (Doc. 29 at 4).  In this complaint, Portfolio alleged a claim for collection of the debt allegedly arising out of Plaintiff's account with Capital One Bank, N.A.  (Doc. 29 at 4; Doc. 1-1 at 2).  On March

2

19, 2012, G & A sent another letter to Plaintiff ("March letter").  (Doc. 30-2 at 1).  This letter informed Plaintiff that a lawsuit had been filed against her and that "to avoid any further litigation, [G & A] has authorization to accept a cash settlement."  (*Id.*).  The letter also stated:

> Unless we can reach a settlement, our office is prepared to continue with the legal process.  Additionally, we tried to contact you by telephone and were unsuccessful in making arrangements for payment.
>
> If you wish to negotiate a discounted settlement you should contact our office **immediately**.

(*Id.*) (emphasis in original).  The October letter was signed by G & A, but contains the notation "PDG/SAG;" the March letter contains the notion "PDG/ALO."  (Doc. 30-1 at 1; Doc. 30-2 at 1).  Defendant Paul D. Guglielmo's ("Guglielmo") initials are PDG; he is the only attorney at G & A with those initials.  (Doc. 30-1 at 1).

Portfolio was issued a collection agency license in New Mexico on June 25, 2003; that license expired on June 30, 2004.  (Doc. 37 at 17).  On January 17, 2013, Portfolio filed an application for a collection agency license; this was issued on March 14, 2013, by the State of New Mexico Financial Institutions Division.  (Doc. 65 at 2).  Neither Guglielmo nor G & A has ever been licensed as a collection agency.  (Doc. 37 at 18-19).

Plaintiff originally filed her complaint in the State of New Mexico Thirteenth Judicial District Court and Defendants removed the case to this Court on June 28, 2012.  (Doc. 1).  In her complaint, Plaintiff alleges that Defendants violated the federal Fair Debt Collection Practices Act ("FDCPA") by filing a lawsuit against Plaintiff when none of them were licensed to act as a collection agency in New Mexico, though they were,

or should have been aware, of the licensing requirements in the State of New Mexico. (Doc. 1-1 at 3-4).   Plaintiff asserted that this conduct was a "threat to take any action that cannot be legally taken," a violation of 15 U.S.C. § 1692e(5), as well as a violation of 15 U.S.C. § 1692e(10) ("The use of any false representation or deceptive means to collect or attempt to collect any debt. . ."). (*Id*. at 3).

Plaintiff also alleged that Defendants failed to inform Plaintiff that she had thirty days in which to dispute the validity of the debt or request verification of the debt, in violation of 15 U.S.C. §§ 1692g(a)(3)-(5). (*Id*.).  Plaintiff further alleged that the March letter created a false sense of urgency in violation of 15 U.S.C. § 1692e(10) and that this letter, signed by Guglielmo, was a violation of 15 U.S.C. § 1692e(3) ("The false representation or implication that any individual is an attorney or that any communication is from an attorney.").  (*Id*.).

In addition to Plaintiff's FDCPA claims, she alleged that Defendants' conduct violated the New Mexico Unfair Practices Act ("UPA"), NMSA 1978 § 57-12-1 *et seq*. To summarize, Plaintiff claimed that Defendants engaged in unfair, deceptive, and unconscionable conduct by attempting to collect debt without being licensed as a collection agency in New Mexico.  (*Id*. at 4-5).  Plaintiff's complaint also contains claims for Malicious Abuse of Process, Class Action Allegations, and Punitive Damages.  (*Id*. at 5-11).

In their Motion for Summary Judgment, Defendants argue that Portfolio is not required to be licensed as a collection agency in New Mexico and, therefore, has not violated the FDCPA or the UPA on the basis of being unlicensed.  (Doc. 29).

Furthermore, G & A and Paul Guglielmo are explicitly excluded from the statute's licensing requirements. (*Id.* at 7). Defendants also argue that Plaintiff's other allegations of violations of the FDCPA and the UPA are baseless and they are entitled to summary judgment on those claims. (*Id.* at 7-11).

## II.    Standard of Review

The court shall grant summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party. *Id.* The movant bears the burden of making a prima facie demonstration that there is no genuine issue of material fact. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670–71 (10th Cir.1998) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).

If the moving party has demonstrated an absence of material fact, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587(1986) (internal quotations omitted). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably to find for the nonmoving party on that issue. *See Anderson,* 477 U.S. at 249. The nonmovant must go beyond the allegations and denials of his pleadings and provide

admissible evidence, which the Court views in the light most favorable to him. *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1490 (10th Cir.1995).

**III.    Analysis**

       *a.  FDCPA*

In 1977, the FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e). The FDCPA prohibits a debt collector from using "false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  In addition to this general prohibition on the behavior of debt collectors, section 1692e contains sixteen subsections detailing specific forbidden practices that fall within the general ban.  15 U.S.C. §§ 1692e(1)-(16).  Among this list of behaviors that qualify as a violation of § 1692e are "the false representation or implication that any individual is an attorney or that any communication is from an attorney;" "the threat to take any action that cannot legally be taken or that is not intended to be taken;" and "the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain any information concerning a consumer."  15 U.S.C. §§ 1692e(3), 1692e(5), 1692e(10).  The FDCPA also outlines the requirements of communications between debt collectors and consumers.  15 U.S.C. § 1692g.

To establish a violation of the FDCPA, a plaintiff must demonstrate that (1) he has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector as defined in 15 U.S.C. § 1692a(6); and (3) the defendant

has engaged in an act prohibited by the FDCPA or failed to comply with a requirement of the FDCPA.  *See Russey v. Rankin*, 911 F.Supp. 1449, 1453 (D.N.M. 1995).  Courts have found that a violation of state law, such as the failure to have a collection agency license when required, is a violation of the FDCPA.  *Lucero v. Bureau of Collection Recovery, Inc.*, 2012 WL 681797, at *1, *15 (D.N.M. 2012) (unpublished).

In analyzing whether the defendant's acts are "false, deceptive, or misleading," the Court applies an objective standard.  *Ferree v. Marianos*, 129 F.3d 130, 1997 WL 687693, at *1 (10th Cir. 1997) (unpublished table decision); *Russey*, 911 F. Supp. at 1453.  This standard, applied by several Courts of Appeals, is how the "least sophisticated consumer" standard would interpret the communication from the debt collector.  *Ferree*, 1997 WL 687693 at *1.  The Court also looks at whether the communication "is likely to deceive or mislead a hypothetical least sophisticated debtor." *Terran v. Kaplan,* 109 F.3d 1428, 1431 (9th Cir.1997).  The hypothetical consumer, however, "can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Ferree*, 1997 WL 687693 at *1 (quoting *Clomon v. Jackson,* 988 F.2d 1314, 1319 (2d Cir.1993)). "[C]ourts have increasingly treated as questions of law, various judgments about the way in which the least sophisticated consumer would interpret particular debt collection claims."  *Lucero*, 2012 WL 681797 *13 (quoting *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 237-38 (2d Cir. 2007).

In this case, Plaintiff has sufficiently established that she has been the object of collection activity arising from a consumer debt and Defendants have conceded that they are considered debt collectors under the FDCPA.  (Doc. 29 at 5).  The issue is

whether Defendants have engaged in an act prohibited by the FDCPA or failed to comply with one of the FDCPA's requirements.

### i. Violations Premised on Lack of License

In her Complaint, Plaintiff alleges that by filing a lawsuit and sending the March letter in which Defendants stated that they would "continue with the legal process" in the absence of a settlement, Defendants violated the FDCPA, specifically by threatening to take an action that cannot legally be taken and using deceptive means to collect the debt.  15 U.S.C. §§ 1692e(5), 1692e(10).  (Doc. 1-1 at 3).  This claim is based on the assertion that Defendants cannot legally collect debts in New Mexico without being licensed as a collection agency under New Mexico's Collection Agency Regulatory Act ("CARA"), NMSA 1978 §§ 61-18A-1 to 61-18A-33.  Defendants argue that they are not required to be licensed as a collection agency and therefore, they have not violated the FDCPA.  (*See generally* Doc. 29).

Under CARA, a collection agency is defined as:

(C) . . . any person engaging in business for the purpose of collecting or attempting to collect, directly or indirectly, debts owed or due or asserted to be owed or due another, where such person is so engaged by two or more creditors.  The term also included any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. The term does not include:
. . .
(6) any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client; and
(7) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due to another to the extent such activity:
. . .
(c) concerns a debt which was not in default at the time it was obtained by such person.

8

NMSA 1978 § 61-18A-2.

Applying this definition, Plaintiff argues that Defendants are a collection agency and must be licensed in New Mexico. (Doc. 37). Although Plaintiff concedes that there are no New Mexico decisions regarding whether CARA requires a purchaser of defaulted debt, such as Portfolio, to obtain a collection agency license, she argues that the FDCPA and licensing statutes in other states contain similar language and have been construed to include purchasers of defaulted debt. (*Id.* at 3-4).

As Defendant points out, CARA defines a collection agency as a person engaging in business for the purpose of collecting debts owed to another; the definition also includes a clause stating that the person must be engaged by two or more creditors. NMSA 1978 § 61-18A-2(C). As both parties have agreed, Portfolio collects only debts that it owns and does not seek to collect debts for anyone else. (Doc. 29 at 3; Doc. 37 at 2). Portfolio purchases discharged financial accounts from creditors and attempts to collect that debt. (Doc. 31 at 1; Doc. 37 at 13). Thus, Portfolio does not collect debts owed to another; it collects debts owed to itself. Portfolio purchased Plaintiff's account from Capital One Bank, thus instead of owing Capital One Bank the balance of her account, Plaintiff owed that money to Portfolio. Additionally, while Portfolio does purchase discharged debt from various creditors, (*See* Doc. 37 at 20-21), these creditors do not "engage" Portfolio to collect this debt for them, as they no longer own the debt. Guided by the well-established principle of statutory construction that the literal language of a statute controls its interpretation when it does not result in an irrational meaning, the Court finds that Portfolio is not a collection agency as defined in

CARA.  *See United States v. Rutherford*, 442 U.S. 544, 554-55 (1979); *Edwards v. Valdez*, 789 F.2d 1477, 1481 (10th Cir. 1986).

As Portfolio's attorney, Guglielmo and his firm, G & A, are not a collection agency and do not need to be licensed as one.   Under CARA, an attorney collecting debt on behalf of and in the name of a client is specifically excluded from the definition of collection agency.  NMSA 1978 § 61-18A-2(C)(6).

Although the Court has determined that Defendants do not need to be licensed as a collection agency based on the text of the statute, the Court will address Plaintiff's other arguments.  Plaintiff asserts that other federal courts have interpreted the definition of debt collector in the FDCPA to include purchasers of defaulted debt and that this definition is "almost identical" to the definition of collection agency in CARA. (Doc. 37 at 1, 4-6).  According to Plaintiff, these decisions "make it clear that Portfolio falls within the definition of 'collection agency' as defined in CARA."  (*Id.* at 1).  In the FDCPA,

> debt collector means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the terms includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. . . . The terms does not include –
> . . .
> > (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person. . . .

15 U.S.C. § 1692a(6).

Although the definition of debt collector in FDCPA is similar to collection agency in CARA, the definition of debt collector lacks a clause similar to the "engaged by two creditors" clause found in CARA.  Additionally, under the FDCPA, a debt collector can be a person whose principal purpose of business is collecting debts **or** a person who regularly collects debts owed or due another.  *See* 15 U.S.C. § 1692a(6).  Thus, the definition of a debt collector in the FDCPA is more expansive than the definition of collection agency in CARA.  CARA was enacted in 1987, ten years after the FDCPA. The New Mexico legislature could have used the exact language found in the FDCPA, but chose not to do so.  In fact, the legislature did include a definition for "debt collector" in CARA, but defined a debt collector as "a collection agency, a repossessor, a manager, a solicitor and any attorney-at-law collecting a debt as an attorney. . . ." NMSA 1978 § 61-18A-2(G).  Despite the similarities between "collection agency" in CARA and "debt collector" in the FDCPA, the New Mexico legislature chose different terminology and a court cannot construe a statute more broadly than its language permits.  *See Lucero*, 2012 WL 681797 at *31.

Plaintiff also argues that federal courts have interpreted similar licensing statutes in other states to include debt purchasers.  However, the Maryland licensing statute that Plaintiff uses as an example, the Maryland Collection Agency Licensing Act ("MCALA"), Md. Code Ann., Bus. Reg., § 7-101, *et seq.*, actually includes an individual who collects defaulted consumer debt in the definition of collection agency.  (*See* Md. Code Ann., Bus. Reg., § 7-101(c), defining a collection agency as "a person who engages directly or indirectly in the business of: (1)(ii) collecting a consumer claim the person owns, if the claim was in default when the person acquired it").  In the case that Plaintiff cites,

*Bradshaw v. Hilco Receivables*, LLC, 765 F.Supp. 2d 719 (D.Md. 2011), the court relies on the legislative history of MCALA in ruling that a debt purchaser is a collection agency.[1]  *Hilco*, 765 F. Supp. 2d at 726.  The textual differences between MCALA and CARA, and the lack of any legislative history in New Mexico suggesting that CARA was meant to include debt purchasers, support Defendants' contention that they do not need to be licensed as a collection agency.

In her Supplemental Response, Plaintiff argues that the fact that Portfolio applied for and obtained a collection agency license in March 2013 creates a genuine issue of material fact as to whether Portfolio is required to be licensed as a collection agency. (Doc. 65 at 3).  Although this fact does suggest that Portfolio *believes* it should be licensed as a collection agency, it does not affect the Court's interpretation of whether the current statute *requires* Portfolio to be licensed as a collection agency.  Defendants correctly argue that whether Portfolio is required to be licensed as a collection agency is a matter of law and Portfolio's application and receipt of a collection agency license does not create a genuine issue of material fact.

Although it is evident that the law in New Mexico has not caught up to the practices of purchasers of defaulted debt, the Court cannot "rewrite legislation in accord with [its] own conceptions of prudent public policy."  *Rutherford*, 442 U.S. at 555.  The Court is constrained to apply the law as it is written, so long as the text of the statute

---

[1] "However, the evolution of the debt collection industry has created a "loophole" used by some entities as a means to circumvent current State collection agency laws. Entities such as "debt purchasers" who enter into purchase agreements to collect delinquent consumer debt rather than acting as an agent for the original creditor, currently collect consumer debt in the State without complying with any licensing or bonding requirement. . . This legislation would include debt purchasers within the definition of a "collection agency," and require them to be licensed by the Board before they may collect consumer claims in this State."  *Hilco*, 765 F. Supp. 2d at 726

does not create irrational results.  *See Edwards*, 789 F. 2d at 1481-82.  As a matter of

law, under the current licensing scheme in New Mexico, Defendants are not required to

obtain a collection agency license.  Therefore, Plaintiff's allegations that Defendants

violated 15 U.S.C. § 1692e(5) because Defendants were not licensed as a collection

agency have no basis and are dismissed.  Likewise, Plaintiff has offered no additional

evidence that Portfolio used false representation or deceptive means to collect a debt in

violation of 15 U.S.C. § 1692e(10) other than their lack of a collection agency license;

those claims are dismissed.

ii.  Other Violations of FDCPA

1.  *The Debt Verification Letters*

In her Complaint, Plaintiff alleges that Defendants failed to follow the

requirements in the FDCPA for notifying consumers of their debts.  The procedures for

validating debts are:

(a) Notice of debt; contents
Within five days after the initial communication with a consumer in
connection with the collection of any debt, a debt collector shall, unless
the following information is contained in the initial communication or the
consumer has paid the debt, send the consumer a written notice
containing--
. . .
(3) a statement that unless the consumer, within thirty days after
receipt of the notice, disputes the validity of the debt, or any portion
thereof, the debt will be assumed to be valid by the debt collector;
(4) a statement that if the consumer notifies the debt collector in
writing within the thirty-day period that the debt, or any portion
thereof, is disputed, the debt collector will obtain verification of the
debt or a copy of a judgment against the consumer and a copy of
such verification or judgment will be mailed to the consumer by the
debt collector; and
(5) a statement that, upon the consumer's written request within the
thirty-day period, the debt collector will provide the consumer with

13

the name and address of the original creditor, if different from the
current creditor.

15 U.S.C. § 1692g.

In their Motion for Summary Judgment, Defendants attached a letter sent by

Portfolio on May 24, 2011 and a letter sent by G & A on October 26, 2011; both of these

letters comply with the statute.[2]  (Doc. 30-1 at 1; Doc. 31-1 at 1).  Plaintiff admitted that

Defendants sent these letters for "purposes of defendants' [summary judgment] motion

only."  (Doc. 37 at 2).  Because Plaintiff has failed to offer any evidence that rebuts

Defendants' assertion that these letters were sent, Defendants have demonstrated that

they did not violate 15 U.S.C. § 1692g.

### 2.  *The March 19, 2012 Letter*

Plaintiff claims that Guglielmo and G & A violated the FDCPA by sending the

March letter to Plaintiff.  Plaintiff makes two claims about this letter: (1) the letter

violated 15 U.S.C. § 1692e(10) by creating a false sense of urgency and (2) Guglielmo

violated 15 U.S.C. § 1692e(3) by falsely representing that he was an attorney, when in

fact he is not licensed to practice law in New Mexico.  (Doc. 1-1 at 3; Doc. 37 at 8-9).

### a.  Violation of 15 U.S.C. § 1692e(10)

"The use of any false or deceptive means to collect or attempt to collect any

debt" is a violation of the FDCPA.  15 U.S.C. § 1692e(10).  In support of her claim that

G & A and Guglielmo created a false sense of urgency by sending the March letter,

---

[2] Both letters contain substantially the same information. (*See e.g.* Doc. 31-1 at 1 "Unless you notify this
office within 30 days after receiving this notice that you dispute the validity of this debt or any portion
thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days from
receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain
verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or
verification.  If you request this office in writing within 30 days after receiving this notice, this office will
provide you with the name and address of the original creditor if different from the current creditor.")

Plaintiff's Response contains only two statements: (1) the letter "is more [than] a debt validation letter and instills a sense of urgency in plaintiff, that she should act immediately if she desires to obtain a discounted settlement;" and (2) the letter "instilled a sense of urgency in plaintiff that if she did not take immediate action, any chance for settlement would be lost."  (Doc. 37 at 9).  Plaintiff also cites three cases, but does not explain how the holdings in those cases support her claim.  In one case Plaintiff cites, *Goswami v. American Enterprise, Inc.*, 377 F.3d 488, the Court found that a debt collection letter made a false statement.  In *Kimbro v. I.C. System, Inc.*, 336 F. Supp. 2d 188, the Court held that summary judgment was not appropriate because there remained a genuine issue of fact as to whether the debt collector's discretion to accept a settlement beyond the deadline stated in the collection letter rendered the letter objectively false.

In contrast to those cases, Plaintiff has not pointed to any evidence that Defendants made a false or deceptive statement in the collection letter.  Merely stating that a letter instilled a sense of urgency does not demonstrate that the letter used false or deceptive means to collect the debt.  Although the letter does state that Plaintiff should contact the office "**immediately**" if she wishes to negotiate a discounted settlement, the letter does not contain a deadline for doing so, nor does it state that Plaintiff will have no other opportunities to negotiate a settlement.  (Doc. 30-2 at 1).  Conclusory allegations are not enough to demonstrate that Defendants violated 15 U.S.C. § 1692e(10) by sending the March letter.

b.  Violation of 15 U.S.C. §1692e(3)

Plaintiff argues that because Guglielmo is not licensed to practice law in New Mexico, sending the March 2012 letter violated 15 U.S.C. §1692e(3) ("The false representation or implication that any individual is an attorney or that any communication is from an attorney."). To support her claim, Plaintiff asserts that Guglielmo authorized the letter, as indicated by his initials on the letter. (Doc. 37 at 8). She also contends that the letter containing the settlement offer and the statement "our office has filed a lawsuit against you" constitutes the unauthorized practice of law, which violates 15 U.S.C. §1692e(5). (Doc. 37).

Both parties admit that Defendant Guglielmo is a licensed attorney, though not in New Mexico. (Doc. 29 at 3; Doc. 37 at 2). Plaintiff has not offered any authority to support her claim that Plaintiff violated 15 U.S.C. § 1692e(3) by falsely representing that he is an attorney and admits that Defendant Guglielmo is, in fact, a licensed attorney. To the extent Plaintiff is asserting that Guglielmo violated 15 U.S.C. § 1692e(3) because he is not an attorney licensed in New Mexico, the FDCPA "merely prohibits non-lawyers from falsely claiming to be lawyers." *Nichols v. Frederick J. Hanna & Associates, PC*, 760 F. Supp. 2d 275, 278 (N.D.N.Y. 2011).

Plaintiff cites *Kolker v. Duke City Collection Agency*, 750 F. Supp. 468 (D.N.M. 1990), for the proposition that practicing law in New Mexico without a license is a violation of New Mexico state law and the FDCPA, but she does not offer any additional authority to support her claims against Guglielmo. In *Kolker*, the case involved allegations that defendants' practice of taking assignment of debts from a creditor on a

16

contingency basis and using the collection agency's own attorneys was the unauthorized practice of law.  *Kolker*, 750 F. Supp. at 470.  Plaintiff has not explained how that situation is analogous to the instant case.

Plaintiff does not even cite to the New Mexico statute governing the unlawful practice of law and explain how Defendant Guglielmo violated it.  In New Mexico,

> no person shall practice law in a court of this state, except a magistrate court, nor shall a person commence, conduct, or defend an action or proceeding unless he has been granted a certificate of admission to the bar. . . . No person not licensed . . . shall advertise or display any matter or writing whereby the impression may be gained that he is an attorney. . . nothing in this section shall be construed to prohibit persons residing beyond the limits of this state, otherwise qualified, from assisting resident counsel in participating in an action or proceeding.

NMSA 1978 § 36-2-27.

Construing the facts in the light most favorable to Plaintiff, the March 2012 letter was authorized by Guglielmo.  However, he did not commence, conduct, or defend an action in New Mexico in violation of NMSA 1978 §36-2-27.  The lawsuit against Plaintiff was brought by Mr. Tallman, an attorney licensed in New Mexico and an employee of G & A.  The letter stated that G & A had filed a lawsuit and that Plaintiff should contact the office to negotiate a settlement, but did not mention Guglielmo specifically.  The office was represented by Mr. Tallman in New Mexico; his name was listed on the letterhead and the address for the New Mexico office was also listed.  (Doc. 30-2 at 1).  Plaintiff has failed to show how Guglielmo's approval of the March 2012 letter was the unauthorized practice of law.  Defendants are granted summary judgment on these claims.

    b.  <u>Unfair Practices Act & Other Claims</u>

Plaintiff's other claims are contingent upon a finding that Defendants misrepresented their legal right to collect debts in New Mexico.  (Doc. 1-1 at 4-11).  Plaintiff acknowledges this in her Response:

> defendants argue that all of plaintiff's UPA claims and claims for malicious abuse of process claims are based on allegations that defendants must be licensed under CARA and since they are not required to be licensed, summary judgment should be granted.  Conversely, if Portfolio is required to be licensed by CARA and was and is acting without a license, then the claims should stand. . . .

(Doc. 37 at 9).  Because the Court has found that Defendants are not required to be licensed as a collection agency under CARA, and their conduct has not otherwise violated New Mexico law, all of Plaintiff's state law claims are dismissed.

## IV.    Conclusion

For the reasons outlined above, Defendants' Motion for Summary Judgment is **GRANTED**.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE